Good morning, Your Honor. May it please the Court, my name is Howard Davis. I'm representing the petitioner Walid Hawatmeh, and I'd like to reserve two minutes for rebuttal. There is no substantial evidence in the record to support the finding that the government met its prima facie showing by clear and convincing evidence that the petitioner committed fraud or made a material misrepresentation and therefore was inadmissible at the time of adjustment. There's also... Stop your right here on the material misrepresentation. Didn't he make a misrepresentation? Well, that is one of the things that is that is left unclear in the record. We're talking about clear and convincing evidence, and one of my concerns here is is that there is no evidence supporting the shifting of the petitioner. So what we have here is that in the I-485, which is the main, the application for adjustment of status, that question there was on page 748 of the record. When he filed it in 1995, he was not in any kind of deportation proceedings. So everybody agreed that at that time there was no issue of misrepresentation. So the only issue, it all boils down to the January 1997 interview and his testimony. So what do we have as to that date? We have Officer Lovingood's testimony as to what the standard procedures were since the officer, the actual interviewing officer himself, was not there to interview. It was Officer Lovingood who approved the case but was not the actual interviewing officer. So we have his... Let me ask you, do the federal rules of evidence apply in immigration proceedings? Do the federal rules of evidence apply? They're a guide. Do they apply or not? Well, they don't formally apply in the way that they would in a civil or in a criminal case in federal court, but they do, they apply but only as a guide. So it's not, I mean, I know that I'm not, I mean, you may, I think that I'm answering the question because when you look at cases that talk about the federal rules of evidence, they don't, they don't, they don't exactly apply in the, like I said, in the way that they, like in a federal civil or federal... They don't really apply? Yeah, they're a guide. Okay, so what standard of review do we use to evaluate the BIA's conclusion that your client was removable? Well, you know, in thinking about this, there's a, I think there's an argument that actually this is a mixed question of fact and law. To the extent that we're looking at factual issues here, then the standard of review would be substantial evidence. The fact that we're looking at the, making a legal conclusion based on those findings of facts, then it would be a de novo standard. So I think that whether or not the... What legal authority supports a de novo standard in this situation? Well, I mean, I'm just thinking of general cases like Ramadan where they versus, versus, I think it's Ashcroft, but when they were talking about the particularly serious crime, then they're, it's, it's, it's a big, they talk about a mixed question of fact and law. Now, with regard to this, it does mention substantial evidence to the, to the extent that it's a factual question. So whether there is substantial evidence to show that, that there was clear and convincing evidence to, to support the government's claim as to removability. Did you work on this brief, your blue brief? I did not. Signed by Mr. Weigel? I did not. You know there's no legal authority cited in this brief? This was, that had not gone unnoticed in my thinking, Your Honor. And what's your conclusion from that? Well, I still think that, I mean, to the, I, the government did mention in its brief the standard of review and it was, it was a substantial evidence. So... Well, actually that's the only place where cases are cited. That is? In the standard of review section. Yeah, no, I, I'm, I'm, no, I, I was noticing the differences between the two, Your Honor, but I'm doing the oral argument. Okay. Was it permissible for the IJ to draw a negative inference from your client's refusal to testify as to what he said in the adjustment proceeding? No, no. Because? Because at, because I, because the government had not made its prima facie case by clear and convincing evidence to have permitted the judge to shift the burden of production to the petitioner. And so, and, and so actually what I wanted to discuss is what is it that we actually have? And that's why I was beginning to talk about the I-485 and Professor, and Officer Lovingood. So Officer Lovingood said that, talked about the standard procedures. I mean, going back to the board's reversal when it said, you know, looking at evidence, we assume that an officer fulfilled his duty. So Officer Lovingood was defining what, what the standard procedures are. So he said, and this is, he, so he says, you know, they go over the questions and then the, the, the relevant question with regard to the issue at hand is, have you ever been deported or have you ever been deported from, he said that the, the relevant question was to ask if he's ever been deported. And then, if the person says yes, then followed up. The, the problem with that is, is that when you look at the I-485, the question on question nine, it says, the question is asked, have you ever been deported or removed from the United States at government expense or excluded in the past year? So if we take a look at what is it to be deported? You know, I mean, it's an ambiguous term. I mean, if you talk to an immigration attorney, they could say a number of things, but to the regular person, it means to be expelled. So to the extent that if, have you ever been deported means have you been expelled? Well, there's no evidence in the record that he'd ever been expelled. So then, or excluded. Is there any evidence that compels a contrary conclusion here? Why shouldn't we infer that he lied at his adjustment interview? Well, and I, and I know that that's the ultimate question. I think, and I'm just trying to set it up as to why I, because it's a couple of parts here. And I do have a minute. Yeah, I know. I only have a minute and 55 seconds, unfortunately. Okay. So the thing is, is that he said that the normal question was asked, have you ever been deported? Well, the truth is he hadn't. Now, again, to be deported, it's ambiguous. It doesn't necessarily mean have you been ordered, deported, or the actual question in the I-485 is, the ultimate question is, are you now in exclusion or deportation proceedings? But that, to, to answer that, to say, to say deported doesn't, to the regular person doesn't necessarily mean are you in deportation proceedings? It, it could mean, um, have you ever been expelled? So then getting to the annotated I-485 where it says, you know, claims no to all. The thing is, is that a claim could either be in writing or orally. So you have the combination of, it's not clear from, uh, Officer Lovingood's standard procedures as to whether or not the Mr. Hawatman was actually asked, you know, are you, um, do you have an order of deportation or are you now, or in, in deportation proceedings? Plus the, um, plus the fact of the ambiguity of the word claim. If it was claim in writing, well, he wrote it in, the claim was written in 1995 before he even got into proceedings. So in the end, there's an ambiguity. It's unclear as to whether or not Mr. Hawatman actually made active misrepresentations. And I think that, that the record compels the reversal because after all, the government have to show by clear and convincing evidence. If there's ambiguity or an uncertainty or an ambiguity, it can mean I could go either way. That's not clear and um, a reversal. And I have 15 seconds left. Actually, you're over by 15 seconds. Oh, well, thanks for the generosity. Your honors. May it please the court. Nancy Cantor on behalf of the attorney general. Would you speak up please? Absolutely. The government's position today is that substantial evidence supports the agency's determination that having committed fraud or willful misrepresentation of a material fact by failing to disclose his outstanding deportation order at his January 97 interview. Where does the record show? Well, your honor, the record shows at the time of his interview for adjustment of status that he misrepresented himself. Well, your honor, at the time of his interview for adjustment of status, well, petitioner filed his, let's go back. We'll start with petitioner filed his application for adjustment of status prior to the issuance of the in absentia removal order. So the application itself is fine. There's no willful misrepresentation in the application itself. However, when he appeared for his interview in January of 1997, the record reflects on page 748 that whoever interviewed or conducted this interview of petitioner noted that petitioner claimed no to all. So that's the troubling part. And why wasn't the person who conducted the interview there to authenticate this document? We don't really know what those words mean, do we? Well, your honor, I don't know why the person, I don't know why this officer who conducted the interview was not available. However, how do we know he was unavailable? I don't know. I mean, I mean, was he maybe he was available and the government didn't bring him in because maybe the that those words don't mean what you want it to mean. He could have been. He could. My recollection from the transcript is that SIS was unable to determine from the application which officer conducted the interview. So we know the officer that the agency brought in to testify did not conduct the interview. Correct. So how is that reliable? Well, your honor, the agency is there's a presumption that the agency conducts its business according to carries out its functions as it's supposed to. Officer Lovingood, who was produced and testified, testified regarding SIS's standard operating procedures and what SIS does when they conduct these types of interviews. You didn't say that standard operating procedures tells you how to interpret the language claims no to all. You didn't testify to that. He said we conduct the interview this way. Correct. We conduct the interview this way and we ask these types of questions, including including reaffirming the questions that are indicated on the I-485. So we don't know. So does that meet the clear and convincing evidence burden of proof? I believe it does, your honor. SIS presented the officer who testified, Officer Lovingood, who approved the application and who had over 10 years of experience in adjudicating and deciding these types of applications. The officer testified that customary practice is to ask petitioners these types of questions when they appear for their interview. Petitioner had an opportunity before the immigration judge to rebut the presumption that SIS officers carry out their duties as they're required to do so, but petitioner presented absolutely no testimony regarding the events that took place at his January 1997 interview. He refused. He simply said, I don't remember. He had an opportunity to rebut the presumption and failed to do so. What should we make of the fact that he may not have understood, um, fully the status of the deportation proceedings at the time of his interview for adjustment of status? Well, your our petitioner testified that he was aware he had been ordered, deported and that his attorney who represented him in deportation proceedings had told him it was, I believe the word was it was fine or it was okay. But, but the question itself is not, do you have an outstanding valid deportation order? Do you have? It's a simple yes or no question. Have you ever been ordered? I mean, if we look at the page of the record, it's a simple yes or no question. Have you ever been deported, removed or are you now in exclusion or deportation proceedings? So even if petitioner's prior attorney had told him no, your deportation order is not valid, a reasonable person would have said yes, I have been placed in deportation proceedings, but I believe that it's not valid for X, Y or Z reason. Why is that necessarily? Why does that necessarily follow? Well, your honor, I believe it's a yes or no question. Are you in have you been ordered deported? If his attorney told him it was okay, you know, you could assume that he wasn't deported. I disagree. He had, he had an outstanding deportation order and counsel made this point that I think is very valid, which is if you have a clear and convincing standard burden of proof, how do you meet it with ambiguity? We don't meet it with ambiguity here. Your honor, sis provided testimony and the agency carried out and performed its duties as it was required to do so. Petitioner had the opportunity to rebut it and he declined to testify or present any evidence indicating that he failed to understand the validity of his deportation order or exact testimony. What page of the record? I say he had the opportunity to rebut and did not. It is 2 62 to 60 to 64. Petitioner was asked on page 2 62 the record. Exactly. The question was, the government is saying that when you went to your interview in 97, you already knew that you were ordered deported answer. Yes, but I don't remember what they asked me. The testimony continues for the next page or two where he's repeatedly asked what happened at the January 1997 interview and petitioner's answers are simply, I don't remember. I don't remember 62 of the transcript or 2 62 of the record. Sorry, the record. Your honor, it's 2 62 of the record and it goes through until 2 64 where petitioner indicates I can't remember what they asked me in the interview. So your time is up. Let me just ask a extraneous question in a way. He's a 54 year old native. He has, he's a practicing Christian, has three Children ages 15 12 and 12. They are United States citizens. His wife is not, but his parents and five siblings are. Is this a case that could be referred to mediation? Is there any criminal record involved in this case? Your honor, there is no criminal record involved in this case. I don't believe that referring this case to mediation would ultimately be successful because the agency takes very seriously any fraud or misrepresentations with respect to attaining benefits here. The agency's position, the government's position today is that petitioner willful willful misrepresentation and seeking to obtain adjustment of status is highly unlikely that the agency would find this to be appropriate case for prosecutorial discretion, including is that one of the elements of the Morton memo? Whether or not in a is it in the Morton memo? Is it discussed at all in the Morton memo? I'm not sure entirely off the top of my head if that is the specific prong of the Morton memo. Um, but based on my past experiences with the agency, they will not look kindly upon misrepresentations in order to obtain benefits. So you're with the Department of Justice? Correct. Okay. Do you do exclusively immigration cases? Yes, Your Honor. Okay. So what do you make of the part of the record where the the judge asked him, um, who's your attorney that did the adjustment of status? And he says that he said when I knew about the deportation, I went to George show up and he was the one. He came with me to the immigration two times. He said that you're clear. I cleared it and you have no deportation. What do I make of that? Yeah, I mean, doesn't it show some confusion on his part? It may have shown a misrepresent misunderstanding on his part. However, the problem we have here is that the alien was undergoing two separate types of relief. He was being ordered deported under one a number, and he was seeking adjustment of status under a separate a number. This would be a different story if the alien was seeking to reopen proceedings based on ineffective assistance of counsel. But that's not the case. Okay, step back for a second. I don't understand who assigns the a numbers. How does that process work? The But I I presume that when an alien appears before the agency, there is a search to whether or not the alien is already in proceedings and has been assigned in a number this case because of when it was. It was in the early nineties. It was in the eighties and nineties. The alien may have been assigned to separate a numbers one when he was ordered removed when he was placed in deportation proceedings because of his visa overstay. And again, when he sought relief, I don't understand that because I've never come across. I mean, obviously we do a lot of these cases. I've never seen a case where there were two a numbers assigned to an alien, either in the strict immigration context or in the 13 26 criminal context. There's always one a number and everything that's related to that person. Did he use a different name? He did not use a different name, Your Honor. I can't explain why that happens, but I know that this is definitely not my first case in which an alien has had two separate aid numbers. I've had cases in which and they're all from the early offer. Most of them are. Most of them predate the two thousands before. I believe there were good electronic records and ways to find people and cross reference. But I have had other cases in which an alien has had multiple a numbers, including having claimed to have naturalized under a prior prior a number with different aliases. So this this is not unique to this case. It is definitely something that has happened. I can't explain why, but there's nothing unique about the fact that it's taken place in this case. Unless the court has any further questions, government's happy to go legal question. Um, so the way the presumption works, um, the government has to first established by clear and convincing evidence that the alien committed fraud. Then the presumption arises, and then the burden shifts to the alien to, um, show that he didn't commit fraud. Is that the way it works? Um, not quite, Your Honor. The government has the burden of proof to establish by clear and convincing evidence that the alien is removable. Here, the government presented evidence which created a presumption. The presumption shifted to the alien to rebut, which the alien did not do in this case. So there's a difference between the burden of proof, which ultimately rests on the government with regards to removability. But when it comes to the presumption that can shift back and forth to the alien without actually altering the burden of proof. So which is the agency in charge here with regards to his adjustment application? That would be sis. But with regards to removal, that would be ice. So who are you representing? Both. We are representing both as well as the board's decision. So when I talk about agency, I'm talking very broadly. But the B I. I mean, technically, our client, our client is the Board of Immigration Appeals and its decision. Um, it just seems like a really pretty slim read. Hang on to some notes to to be notes that aren't authenticated and the agency's custom and practice when we've already demonstrated in this case that there was a problem with the agency's custom and practice because they issued two proceedings under two different a numbers for the same immigrant. And there's all these sort I use the word mitigating mitigating factors under the Morton memo present in this case. It just seems odd that you wouldn't even want to try mediation and get to the bottom of this. Try mediation, Your Honor. And I'm happy to email. I'm happy to contact the agency and ask if they're interested. I just find that it is based on personal experience. I believe it is highly unlikely that the agency will look kindly. And I have one last point is the standard review that replies. This case is substantial evidence whether or not the board's decision that petitioner engaged in willful misrepresentation is reviewed for substantial evidence. Government's position today is that nothing compels reversal of that decision. Thank you. Thank you very much. Council. Um, what neighbors is holder will be submitted and we will take up
judges: Nelson, Wardlaw, Rawlinson